Mary Walker Edwards v. Commissioner.
Edwards v. Commissioner
Docket No. 4933.
United States Tax Court
1945 Tax Ct. Memo LEXIS 330; 4 T.C.M. (CCH) 69; T.C.M. (RIA) 45026; January 23, 1945
J. Edward Johnson, Esq., 611 Citizens Nat. Bank Bldg., Brownwood, Tex. and Warren Scarborough Esq., for the petitioner. D. Louis Bergeron, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves a deficiency in gift taxes for the calendar year 1942 in the amount of $6,480. In his deficiency notice the Commissioner "* * * held that the 500 shares of common stock of the Walker-Smith Company * * * had a fair market value at date of gift of $103,000.00 in lieu of $55,000.00 as reported." The correctness of that holding presents the sole issue in this case. Findings of Fact We adopt and incorporate herein by reference and make a part hereof the entire stipulation of facts which the parties have filed in this proceeding. [1] The stipulated facts, *331 together with additional facts, the finding of which is based upon evidence adduced at the trial, may be summarized as follows: The petitioner, Mary Walker Edwards, is an individual residing in Brownwood, Texas, and Greenwich, Connecticut. On December 25, 1942, she made a gift of 500 shares of the common stock of Walker-Smith Company to her husband. Thomas Earl Edwards. On March 11, 1943, she filed with the collector of internal revenue for the Second District of Texas a gift tax return, and in Schedule A thereof reported the value of the 500 shares on the date of the gift to be $55,000. Walker-Smith Company, hereinafter sometimes referred to as the Company, is a Texas corporation, originally organized on January 30, 1895, under the name of Temple Grocer Company. It is engaged in the wholesale grocery business, with its principal place of business at Brownwood, *332 Texas, and has 15 branch offices. The corporate name was duly changed to Walker-Smith Company on January 23, 1903, on which date its authorized capital stock was increased from 2,000 shares of common stock with a par value of $100 a share to 2,500 shares of common stock with a par value of $100 per share. At the date of the gift involved, the company had an authorized capital stock of 10,000 shares of common stock of a par value of $100 a share, and 5,000 shares of preferred stock, providing for par value of $100 and payment of 5 per cent annual dividends, cumulative and payable quarterly prior to any dividends on common stock, and no voting rights except after default in four successive dividends. On December 31, 1942, there were outstanding 9,945 shares of common stock. On June 30, 1942, the number of shares outstanding was 9,935. The entire issue of preferred stock was subscribed and paid for by J. A. Walker, in 1938. From the inception of the Company to December 15, 1942, when J. A. Walker, petitioner's father, died, he was a director of the Company and owned more than 50 per cent of its common stock. On December 25, 1942, the shares formerly owned by J. A. Walker, exclusive *333 of the 500 shares which constituted the gift, were held as follows: 4,833.55 shares in trust for Mary Walker Edwards; 567,45 shares in trust for a college; 2,325 shares by members of a Smith family; 772 shares by members of a Tillar family; and 1,447 shares in small amounts by about 15 people. On December 15, 1942, the officers of the Company were: J. A. Walker, president; C. Y. Early, vice president; and D. Coalson, secretary-treasurer. They with H. G. Wilson and B. C. Bynum were the directors. After J. A. Walkers' death, the number of directors was increased to ten, of whom only two had had previous experience in the management of a wholesale grocery business. D. Coalson, who owned 25 shares of stock and who had been with the company for more than 30 years, died in June, 1943. In December, 1942, he had been very ill and came to the store only occasionally. J. A. Deen succeeded him as secretary-treasurer and as a director in July, 1943. He had been employed as auditor prior thereto and had been associated with the Company for 21 years. B. C. Bynum owned 20 shares of common stock and was trustee of 2,224 shares of the Estate of Mrs. Marie Bynum Smith. C. Y. Early, who on December 25, 1942, was *334 67 years old, owned 178 shares of common stock. He has been associated with the Company for more than 40 years, first as a salesman, later as a director and vice president, and after J. A. Walker's death as executive vice president. H. G. Wilson has been connected with the Company for more than 30 years, and for the past 19 years as credit manager. He was the owner of 30 shares of common stock prior to July 16, 1943, on which date he sold 5 shares at their book value of $201.76 per share, to J. A. Deen. After J. A. Walker's death, the Company's business was conducted largely by Early, Wilson and Deen. Up until the time of his death on December 15, 1942, J. A. Walker formulated the policies of the Company, and was very active in the operation of the business in all respects. Walker was a man of wealth outside of the interest he owned in the Company. He had the reputation of being an astute business man. He financed the Company which was indebted to him at various times in sums ranging from $500,000 to $1,500,000. He also personally endorsed the Company's notes. Although he was 78 or 79 years old when he died, he came to the store twice daily with regularity and often discussed particular *335 accounts. He also attended policy-making conferences which were held twice a month. During the last 8 or 10 years of his life he devoted four to six hours every day to the affairs of the Company. During all the years J. A. Walker was associated with the Company he never drew any salary as president. After J. A. Walker's death, there was considerable unrest and dissatisfaction between the stockholders and the directors, and litigation against the latter for paying themselves alleged illegal and unauthorized bonuses for 1940 and 1944 was threatened. Since July 1, 1935, the Company's books have been kept on the basis of a fiscal year ending June 30 of each year; prior to July 1, 1935, they were kept on the calendar year basis. The Company's net income varied from approximately $160,000 in 1926 to about $235,000 in 1942 (after payment in 1942 of $25,000 dividends on preferred stock), with net sales for the same period ranging from approximately $6,000,000 to about $9,600,000, with net income considerably reduced during the years 1930-1935. The business of the Company has been well managed and it has done better than the average business in the same line in the United States. Nevertheless, *336 the net profit per dollar has shown a steadily decreasing trend from 1905 through 1940. The volume of the Company's business first became affected by the European war as early as the fall of 1939, and sales increased materially during the fiscal year ended June 30, 1940. During the years 1941 and 1942, the war had an even more definite influence on the Company's sales. There was an army camp or a flying school in Brownwood, Texas, and in or near most of the Company's branches. This resulted in an increase of approximately 25 per cent in civilian population between 1940 and 1942. These factors resulted in increased sales for the Company. In 1941, sales to army camps amounted to 6.04 per cent and in 1942 to 10.9 per cent. The company paid dividends on common stock at the rate of 10 per cent per year from 1926 to June 30, 1935, except for 1931 and 1932, when none were paid and 1934 when 8 per cent was paid. Thereafter dividends were 10 per cent annually until June 30, 1942, except that for the fiscal years ending in June 1936, 1937 and 1938, the dividends were, respectively, 11, 19 and 12 per cent. The last three years 5 per cent was paid on the preferred stock. Invested capital increased *337 from about $1,440,000 in 1926 to about $1,922,000 in 1942, the latter figure not including $500,000 preferred stock issued in 1938. The Company's balance sheets, as of June 30 each year, showed total assets of from $2,592,430.35 in 1938 to $3,658,430.23 in 1942, with liabilities, excluding stock, from $1,105,430.35 to $2,164,930.23. During that period the Company owed J. A. Walker the major part of "Liabilities to Stockholders," running from about $340,000 in 1938 to about $82,000 in 1942. On December 31, 1942, and December 31, 1943, the assets were $3,856,579.73 and $3,972,196.10, respectively, with liabilities, excluding stock, of $2,362,079.73 and $2,472,196.10, respectively. Book value of the Company's common stock, based on net worth, (eliminating $500,000 preferred stock) varied from $173.13 on June 30, 1938, to $219.50 on December 31, 1942, and $227.95 on December 31, 1943 (eliminating reserve for contingencies), and if such reserve is not eliminated from $158.94 on June 30, 1938, to $207.53 on December 31, 1942, and $216.05 on December 31, 1943. The reserve was $140,000 from 1934 to June 30, 1939, and thereafter $119,062.12. On July 2, 1943, there was sold to Albert Fryar, *338 the then manager of a branch office of Walker-Smith Company at Amarillo, Texas, 20 shares of the common stock of Walker-Smith Company at $207.53 per share, the book value as of the close of December 31, 1942. This sale was made in accordance with a custom of the Company which had been in effect for many years of selling stock in the Company to its branch managers. According to that custom, the buyer signed a promissory note in the amount of the purchase price and the dividends which the stock earned was applied to the note. Under this custom, a purchaser was never expected to pay the note from other sources. On July 16, 1943, there were sold to J. A. Deen, 20 shares of the Company's common stock at $201.76 per share, the then book value. Fifteen of these shares were purchased from the Company and five were purchased from H. G. Wilson. This sale was made in order to qualify J. A. Deen, who succeeded D. Coalson as Secretary-Treasurer in July 1943, as a director of the Company as provided for by the Company's bylaws. As a director, J. A. Deen would according to the Company's practice, receive bonuses in addition to salary which would be approximately equal in amount to his salary. J. *339 A. Deen was familiar with these facts when he purchased the 20 shares on July 16, 1943. The Company's common stock was not listed on any exchange, and was not dealt in through brokers. All sales of the common stock by the Company either to employees, branch managers, or officers, were made at book value. There was no trading or sales of any kind among those employees who owned shares of the Company's common stock. The charter of the Company was extended another 30 years on March 3, 1944. When petitioner made her gift of 500 shares of common stock, on December 25, 1942, certain other factors adversely affected its fair market value. These include the growth of the chain stores and of cooperatives as well as the expansion of the practice of direct selling by manufacturers, all devices tending to eliminate independent wholesalers like Walker-Smith Company; also a hazardous employment situation, and uncertainty inherent in the inevitable disposition of the Government of food surpluses at the end of the War, and the effect of such disposition upon businesses like that of Walker-Smith Company. The fair market value of the 500 shares of Walker-Smith Company common stock which petitioner *340 gave to her husband on December 25, 1942, was $87,500 or $175 per share on the date of the gift. Opinion In our Findings of Fact, supra, we have found the fair market value of the 500 shares of the common stock of Walker-Smith Company as of December 25, 1942, to be $87,500, or $175 per share. That finding disposes of the only issue presented to us for determination in this proceeding. Our decision has been based upon a careful analysis of all the pertinent evidence adduced at the trial of this case either in the form of stipulated facts or oral testimony. In arriving at our conclusion, we have given consideration to "the Company's net worth, earning power, dividend-paying capacity and all other relevant factors having a bearing upon the value of the stock," [2] including the Company's past history and future prospects. A lengthy review of the facts hereinbefore recited would serve no useful purpose. Petitioner contends that the fair market value of the common stock on December 25, 1942, is not greater than $143.50 per share. Respondent maintains that the stock had a fair market value as of that date of at least $206 per share. The parties are in substantial agreement as to most *341 of the facts; they disagree primarily upon "the cogency or unimportance of particular facts or their implications." [3] We accordingly limit our discussion below to this phase of the case. Petitioner concedes on brief, and we agree, that the book value of the common stock on December 31, 1942, should not be disregarded entirely. That book value per share is $219.50, if we include in the net worth of the corporation the sum of $119,062.12 "Reserve for Contingencies," and $207.53 if such is excluded. The record in this case is devoid of any convincing evidence that the assets underlying the corporation's net worth are inflated to such a degree that book value is unreliable for that reason alone. However, review of the evidence demonstrates that fair market value is represented by a figure much lower than book value. J. A. Walker died ten days prior to the date of the gift here involved. He was of the highest importance to the welfare of the firm. He not only directed its policies, but constituted a ready and generous source of cash and credit for *342 the corporation. His death adversely affected the fair market value of the corporation's stock. Other factors depressing fair market value include the growth of chain stores and other similar organizations tending to eliminate the wholesaler, the downward trend of the amount of profit per dollar realized by Walker-Smith Company, the fact that these 500 shares constituted a minority interest, the fact that the common stock of Walker-Smith Company has been a junior security since May 31, 1938, and the uncertainty of the Company's business following the termination of the war. In her gift tax return the petitioner reported the fair market value to be $110 per share. The $143.50 figure she now urges depends upon testimony which did not take into account book value, and eliminated from consideration the low net earnings during 1931-1932, and the high net earnings for the fiscal years ending in June 1941 and June 1942. Both periods, in our opinion, should be considered. Therefore, in view of the elimination of such factors, we consider the evidence not to furnish a sound criterion of value. On the other hand, we do not give full weight to the sales at book value of 20 shares of stock to *343 a branch manager at $207.53, or to sale of 20 shares to another employee at $201.76, within a few months of the date of the gift. The special factors involved in those sales, set forth in the facts and not here necessary of repetition, render them not representative of fair market value. Upon a consideration of all the factors hereinbefore discussed and upon such additional factors as the corporation's record of dividends on the common stock, net sales, and the general history of the corporation throughout depression periods and periods of prosperity in the past, and upon the future business prospects of the corporation, we are of the opinion that $175 per share, a total of $87,500, was the fair market value of the 500 shares of common stock of Walker-Smith Company, here involved, on December 25, 1942. Decision will be entered under Rule 50. Footnotes
1. At the trial, respondent objected to the admission of the second part of the stipulation on the ground that facts contained therein are "not material to the issue." Respondent's objection is overruled. Due consideration has been given in the opinion hereinafter set forth to the relative weight which these facts warrant.↩
2. Regulations 108, Sec. 86.19(c). ↩
3. Supplee-Biddle Hardware Co. v. Commissioner, (3rd Cir.) 144 Fed. (2d) 711, 714↩.